OPINION
Gregory C. Brant, M.D., appellant, appeals an October 1, 1998 judgment of the Franklin County Court of Common Pleas granting the motion to show cause filed by the State of Ohio ("the state"), appellee.
On June 16, 1997, a subpoena was filed with the Franklin County Court of Common Pleas requiring appellant to appear on July 16, 1997 before a Franklin County Special Grand Jury charged with investigating workers' compensation fraud. The subpoena duces tecum commanded appellant to:
 Provide all written, recorded, printed or electronically stored material which reflects office visits by, medical treatment rendered to and billing/reimbursement on behalf of the following patients from 1993 to date: [attached list naming twenty-three patients] including, but not limited to, appointment books/schedules, sign-in sheets, no show/re-call books, day sheets/end of day reports, patient files, SOAP/progress notes, patient charts, personal history forms, medical test results, insurance/travel cards, invoices, claim/billing forms, billing/encounter sheets, remittance advice forms, patient ledgers/accounting records and receipts.
On July 15, 1997, counsel for appellant notified the state that he was asserting his Fifth Amendment privilege with regard to the production of the records that were the subject of the subpoena. On July 29, 1997, the office of appellant was searched pursuant to an order of the Common Pleas Court of Ashtabula County by agents of the Bureau of Workers' Compensation ("BWC") and the Attorney General of Ohio. The patient files indicated in the grand jury subpoena were not found at the office. On September 26, 1997, appellant complied in part with the subpoena by providing copies of some records and summaries of other records. The produced records did not include original handwritten patient progress notes or appointment books for 1993 and 1997.
On March 17, 1998, the state filed a motion for a show cause order regarding appellant's failure to comply with the subpoena duces tecum. On April 1, 1998, appellant filed a brief in opposition to the state's motion for a show cause order, claiming that the records were protected by his Fifth Amendment right against self-incrimination. On April 23, 1998, the state filed a response to appellant's brief in opposition. On May 1, 1998, appellant filed a reply in support of his brief in opposition.
On June 3, 1998, the trial court filed a decision and entry ordering appellant to produce the records requested in the grand jury subpoena. The trial court found that the records requested pursuant to the subpoena fall under the "required-records exception" to the Fifth Amendment privilege, and, therefore, appellant is precluded from asserting his Fifth Amendment privilege. Appellant appealed this decision and entry; however, we dismissed appellant's appeal sua sponte for lack of a final appealable order because the trial court had not imposed a sanction for appellant's failure to comply with the subpoena.
On October 1, 1998, the trial court filed a journal entry finding appellant in contempt of court and ordering him to be held by the Franklin County Sheriff until he complied with the court's order. Appellant's custody was stayed without bond pending appellate decision. Appellant now appeals this judgment, assigning the following sole assignment of error:
 THE TRIAL COURT ERRONEOUSLY GRANTED THE STATE'S MOTION TO SHOW CAUSE FINDING THE APPELLANT PHYSICIAN IN CONTEMPT FOR FAILING TO PRODUCE THE CONFIDENTIAL MEDICAL RECORDS OF 23 PATIENTS IN RESPONSE TO A GRAND JURY SUBPOENA WHERE THE PHYSICIAN LAWFULLY ASSERTED THE FIFTH AMENDMENT PRIVILEGE AGAINST SELF-INCRIMINATION AND DECLINED TO PRODUCE RECORDS IN RESPONSE TO THE SUBPOENA.
When reviewing the trial court's determination on a contempt motion, an appellate court must apply the abuse of discretion standard. State ex. rel Adkins v. Sobb (1988), 39 Ohio St.3d 34. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. Because "the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the trial judge."Denovchek v. Bd. of Trumbull Cty. Commrs. (1988), 36 Ohio St.3d 14,16.
Appellant argues in his sole assignment of error that his production of his "anecdotal handwritten patient notes" and appointment books is protected by the Fifth Amendment privilege against self-incrimination and that the "required-records" exception to such Fifth Amendment privilege is inapplicable. The state contends, however, that production of the documents in question is justified by the required-records exception to the privilege against self-incrimination. Neither party cites any Ohio law regarding this issue. However, each party cites various cases from other jurisdictions in support of their respective positions.
In Shapiro v. United States (1948), 335 U.S. 1,68 S.Ct. 1375, the Supreme Court held that records required to be kept by an emergency price control act and obtained by an administrative subpoena duces tecum were properly admitted into evidence in a subsequent prosecution for violation of the price control act without violating the right against self-incrimination. The record involved was a sales record specifically required to be kept by the applicable regulation. The Court held that:
 * * * [T]he privilege which exists as to private papers cannot be maintained in relation to "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation, and the enforcement of restrictions validly established."
Id., at 33.
Before documents will be considered "required records" pursuant to Shapiro, the state must establish the following: (1) the requirement that the records be kept must be essentially regulatory; (2) the records must be of a kind that the regulated party has customarily kept; and (3) the records themselves must have assumed "public aspects" that render them at least analogous to public documents. Grosso v. United States (1968), 390 U.S. 62,67-68, 88 S.Ct. 709, 713.
Appellant's main contention is that the "required-records" exception does not apply because "[t]he anecdotal notes contained in the patient charts which Dr. Brant declined to produce are not required by statute to be kept." Appellant argues that Ohio has no statute mandating that physicians create or maintain the type of records the state seeks from him.
First we note that despite appellant's argument to the contrary, we find nothing to compel us to limit the application of the required-records exception to only those medical records that are required to be kept by statute. We find the required-records exception to be equally applicable to those medical records that are required to be kept by administrative regulations, statutes, and provider agreements between the administration and the medical-care provider. See In re Grand Jury Proceedings(McCoy/Sussman) (C.A.5, 1979), 601 F.2d 162, 168 ("the `required records' doctrine is not limited to records required to be kept by an Act of Congress, and includes records required by administrative regulation"); see, also, In Re Special Grand JuryInvestigation of Medicaid (Kenneth J. Uretsky, D.D.S.) (Nov. 29, 1979), Franklin App. No. 79AP-354, unreported (1979 Opinions 3601) (the required-records exception applies to medical records required to be kept pursuant to "provider agreements," "regulations," and "statutes") ("Uretsky").
In Uretsky, supra, we discussed the required-records exception under circumstances similar to those in the present case. In Uretsky, the appellant was being investigated for Medicaid fraud and was issued a subpoena duces tecum for certain documents, including, appointment books, day sheets, and dental-patient charts. The appellant refused to produce the requested records and asserted that his Fifth Amendment privilege against self-incrimination applied to the records. The appellant was found in contempt for failing to comply with an order overruling his motion to quash the subpoena duces tecum and ordering him to respond to such subpoena.
On appeal, the appellee asserted that the required-records exception applied to the records because the appellant was required to keep the records pursuant to a provider agreement with Medicaid, which required appellant "`[t]o keep such records as are necessary fully to disclose the extent of the service provided to individuals receiving assistance under the State Plan.' " Id. at 3606. In attempting to determine whether the records in question were required records, we stated that the "[provider] agreement is not specific, nor have any regulations or statutes setting forth specific requirements been called to the attention of the court." Id. In looking specifically at the provider agreement, we found:
 * * * It is not readily apparent that the appointment books are records required to be kept by the provider agreements, although it is conceivable that the day sheets are since there is a reference to a running account of patients seen and services rendered. Even assuming that the dental-patient charts constitute records required to be kept by the provider agreement, there was no limitation as to the years involved. However, from what is before us, it is impossible to ascertain whether or not the records sought by the subpoena duces tecum could fall within the required-records exception to the right against self-incrimination. At a very minimum, a showing would be required as to the nature of the records "necessary fully to disclose the extent of the service provided" within the meaning of the provider agreement. Although records required to be kept by such provider agreement may properly fall within the required-record exception to the right against self-incrimination, it must first be demonstrated that the records sought are records falling within that exception. * * *
Id. at 3606-3607.
Because in Uretsky the trial court failed to afford the appellant an opportunity to litigate the issue of self-incrimination, we reversed and remanded the case to the trial court to determine whether the provider agreement or any statute or regulation required the appellant to keep such records.
In the present case, the trial court specifically found several provisions of Ohio law required appellant to keep the records at issue in the present case, including R.C. 4123.71, R.C. 4121, and Ohio Adm. Code 4123-7-38.
R.C. 4123.71 provides, in pertinent part:
 Every physician in this state attending on or called in to visit a patient whom he believes to be suffering from an occupational disease as defined in section 4123.68 of the Revised Code shall, within forty-eight hours from the time of making such diagnosis, send to the bureau of workers' compensation a report stating:
(A) Name, address, and occupation of patient;
(B) Name and address of business in which employed;
(C) Nature of disease;
(D) Name and address of employer of patient;
 (E) Such other information as is reasonably required by the bureau.
 The reports shall be made on blanks to be furnished by the bureau. The mailing of the report within the time stated, in a stamped envelope addressed to the office of the bureau is a compliance with this section.
Thus, appellant is required by this statute to draft a report on blanks furnished by the BWC that includes the "nature of the disease" and "[s]uch other information as is reasonably required by the bureau." The records in question in the present case, i.e., handwritten anecdotal patient notes and appointment books, were not written on "blanks to be furnished by the bureau," and R.C. 4123.71 does not specifically refer to a requirement by a medical provider to maintain such records.
However, appellee also argues that Ohio Adm. Code4731-11-02(D) requires appellant to maintain the records in question in conjunction with his ability to prescribe controlled substances. R.C. 4731.22(B) (20) permits the state medical board to suspend, limit, or revoke a doctor's certificate to practice for violating or attempting to violate, directly or indirectly, any provisions of that chapter or any rule promulgated by the board, which would include Ohio Adm. Code 4731-11-02(D). Ohio Adm. Code 4731-11-02(D) provides as follows:
 A physician shall complete and maintain accurate medical records reflecting his examination, evaluation, and treatment of all his patients. Patient medical records shall accurately reflect the utilization of any controlled substances in the treatment of a patient and shall indicate the diagnosis and purpose for which the controlled substance is utilized, and any additional information upon which the diagnosis is based.
Thus, Ohio Adm. Code 4731-11-02(D) requires through R.C.4731.22(B) (20) that a doctor maintain accurate medical records reflecting the doctor's examination, evaluation, and treatment of all patients. We find that the handwritten patient progress notes fall under this requirement because they were clearly maintained to reflect appellant's "examination, evaluation, and treatment" of the twenty-three patients at issue. Therefore, such handwritten patient progress notes are required by statute and regulation to be kept by appellant. However, it is less certain that appointment books would qualify as a record that is kept to reflect appellant's "examination, evaluation, and treatment."
We found in Uretsky that appointment books may qualify as required records if the provider agreement requires such records to be maintained. In Section III of the provider agreement between appellant and BWC, appellant agreed to:
 A. Abide by the Ohio Revised Code and rules promulgated thereunder by BWC and Industrial Commission (IC). * * *
* * *
 E. Maintain such records as are necessary to fully disclose the extent of services provided to injured workers under chapters 4121 and 4123 of the Ohio Revised Code;
 F. Furnish, upon receipt of written request, and within 5 business days, to BWC, self-insuring employer, appropriate certified MCO and/or QHP information, including nature, extent and date and time of service, concerning treatments, services rendered and goods provided. * * *
Our finding in Uretsky applies in this case in that it is not readily apparent that appointment books are "such records as are necessary to fully disclose the extent of services provided to injured workers," as required by subsection (E) of the provider agreement. However, subsection (F) further requires the provider to furnish to BWC information "including the nature, extent and date and time of service, concerning treatments rendered and goods provided." Thus, records "necessary to fully disclose the extent of services provided" must include information regarding the "extent and date and time of service." We find that the appointment books in question are required because they constitute information disclosing the "extent and date and time of service," that would "fully disclose the extent of services provided." We also note that neither section (E) nor (F) of the provider agreement place any apparent limitation that the only records required under those sections are those records kept on the blank forms furnished by BWC, as limited in R.C. 4123.71. Thus, we find that the records in question are required to be kept by statute, regulation, or the provider agreement.
As can be seen from the cited provider-agreement provisions and regulations, the requirement that the records be kept is clearly essentially regulatory. The State Medical Board and the BWC both have strong interests in regulating the records kept by doctors under their purview. The information required to be disclosed does not inescapably implicate the medical providers in criminal activity. Of course, there is nothing ordinarily criminally suspect about maintaining complete and accurate medical records of patients, and in the vast number of cases by complying with the above provisions, the medical provider would admit nothing criminal. Therefore, we find the first prong as set forth in Grosso has been satisfied.
The records in question also satisfy the second prong inGrosso that the records must be of a kind that the regulated party has customarily kept. Clearly, appellant has customarily kept the handwritten patient progress notes and the notations in the appointment book. Patient progress notes and appointment books are aspects of the overall records that medical providers can be expected to maintain when they care for patients, for their own protection, for the patient's protection, and in order to run a medical establishment efficiently. Thus, the second prong ofGrosso has been met.
Further, the records in question have also assumed "public aspects" that render them at least analogous to public documents. The provider agreement, as well as several regulations, contemplate the disclosure of the records to a pubic governmental agency. In addition to Section III (F) of the provider agreement, as provided above, appellant also agreed to:
 G. Make records of billed treatments, services and goods available for review within 30 days or as agreed to among parties, by an authorized representative of BWC, self-insuring employer, appropriate certified MCO and/or QHP during normal business hours at no cost. * * *
Further, Ohio Adm. Code 4123-7-38 provides, in pertinent part:
 (B) Pursuant to division (P) (3) of section 4121.121
of the Revised Code, the industrial commission, the bureau of workers' compensation, or their agent may review providers' patient and billing related records to ensure workers are receiving proper and necessary medical care and to ensure compliance with the bureau's statutes, rules, policies and procedures.
 (1) The commission, the bureau, or their agent may review records before, during, or after delivery of services. Reviews may be random, with no unreasonable infringement of provider rights, or may be for cause, and may include the utilization of statistical sampling methodologies and projections based upon sample findings. Records reviews may be conducted at or away from the provider's place of business.
 (2) The commission, the bureau, or their agent may request legible copies of providers' records. Providers shall furnish copies of the requested records within thirty calendar days of receipt of the request. The bureau shall establish a schedule for payment of reasonable copying costs for copying records, which shall be published in a health care provider billing and reimbursement manual.
 In addition, Ohio Adm. Code 4123-6-20 provides, in pertinent part:
 (D) In accepting a workers' compensation case, a medical provider assumes the obligation to provide to the bureau, claimant, employer, MCO, QHP, or their agents, upon written request or facsimile thereof and within five business days, all documentation relating to the claim required by the bureau and necessary for the claimant to obtain medical services, benefits or compensation. * * *
By virtue of the provider agreement, appellant specifically consented to produce such records that he kept regarding these workers' compensation claimants. Further, the above regulations and provider agreement provisions make it clear that participation in the government-sponsored workers' compensation program subjects the medical records in question regarding the workers' compensation claimants to review by the state. Because the medical provider is required to furnish the records for review by various state officials, the employer, and the claimant upon request, these provisions render these records at least analogous to public documents. See In re Grand JurySubpoena (Underhill) v. United States (C.A.6, 1986), 781 F.2d 64,68-69, certiorari denied (1986), 479 U.S. 813, 107 S.Ct. 64
(finding that odometer statements maintained by automobile dealers assume "public aspects" because every transferor is required to provide a signed copy to the buyer, every transferee is required to sign the statement to acknowledge receipt, and automobile dealers must permit inspection of the records by designated federal officials pursuant to 15 U.S.C. § 1990f). As the Sixth Circuit found in Underhill:
 * * * [I]f an individual chooses to begin or continue to do business in an area in which the government requires record keeping, he may be deemed to have waived any Fifth Amendment protection which would otherwise be present in the absence of the record keeping regulation.
* * *
Id. at 70. Thus, we find that under these circumstances the documents in question have assumed some "public aspects" that render them at least analogous to public documents, and the third prong of the Grosso test has been met.
Therefore, we find that the medical records in question are "required records" as to prohibit appellant from raising his Fifth Amendment privilege against self-incrimination.
We also note that appellant raises in his brief the argument that the trial court erred in finding him in contempt because the records are confidential pursuant to the doctor/patient privilege. However, appellant failed to raise this argument in the trial court. Therefore, appellant has waived his right to present this argument on appeal. See Stores Realty Co.v. Cleveland (1975), 41 Ohio St.2d 41, 43.
Accordingly, appellant's assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, P.J. and PETREE, J., concur.